**WOLVERINE WORLD WIDE, INC., Plaintiff–Appellant,**

and

**Brooks Shoe, Inc., Plaintiff,**

v.

**NIKE, INC., Defendant–Appellee.**

**No. 94–1119.**

United States Court of Appeals, Federal Circuit.

Oct. 5, 1994.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Nov. 14, 1994.

Ernie L. Brooks, Attorney, Brooks & Kushman, P.C., Southfield, MI, argued for plaintiff-appellant. With him on the brief were Paul M. Schwartz and Frank A. Angileri.

David A. Anderson, Attorney, Willian, Brinks, Hofer, Gilson & Lione, Chicago, IL, argued for defendant-appellee. Of counsel were James R. Sobieraj and Dominic P. Zanfardino.

Before MICHEL, LOURIE, and SCHALL, Circuit Judges.

**1194**

SCHALL, Circuit Judge.

Wolverine World Wide, Inc. (Wolverine) appeals from the November 12, 1993 judgment of the United States District Court for the Western District of Michigan, No. 1:92:CV:886, granting summary judgment of non-infringement of U.S. Patent No. 4,736,-531 (the '531 patent) in favor of Nike, Inc. (Nike).[1] We affirm.

## BACKGROUND

Wolverine is the assignee of the '531 patent, which is titled "Athletic Shoe for Aerobic Exercise and the Like." The claims of the '531 patent relate to an athletic shoe having an elastic "slipper sock" disposed within the shoe's upper. According to the specification of the '531 patent, the slipper sock keeps the shoe "in tune" with the wearer's foot by "mov[ing] totally simultaneously with the foot, stretching momentarily away from the shoe as necessary, but almost immediately bringing the shoe into total conformity with the foot." Col. 4, lines 23–27. In this manner, presumably, the object of the '531 patent—"comfortable containment of the foot even during the abrupt lateral thrusts and extended vertical flexes experienced [during] vigorous activity," col. 1, lines 56–58—is achieved. Claims 1, 4, and 5 of the '531 patent, the claims at issue on appeal, recite:

1. An athletic shoe for aerobic exercising and the like comprising:

a sole assembly;

an upper secured to said sole assembly, defining a foot-receiving cavity and having closure means for retention of the shoe on a foot;

a forefoot-enveloping and gripping, elastic slipper sock in said cavity encompassing the forepart of said cavity, said elastic slipper sock having a bottom anchored to said sole assembly and free to grip onto a foot in said cavity independent of said upper; and

an insole having a forward portion in said slipper sock on the inner upper surface of said slipper sock bottom.

4. The shoe in claim 1 wherein said elastic slipper sock bottom extends to the front of the heel and having its upper part over the instep region.

5. The shoe in claim 4 wherein said elastic slipper sock comprises a stretchable elastic fabric having a foam layer in the instep region to serve also as a shoe tongue.

Wolverine brought suit in the district court alleging that several of Nike's shoes—i.e., all of Nike's "Huarache" line of shoes and those of the "Air" line that contain the "Dynamic Fit" component—infringe claims 1, 4, and 5 of the '531 patent, either literally or under the doctrine of equivalents. In due course, Nike moved for summary judgment that its shoes did not infringe the '531 patent. The dispute in the district court centered on the meaning of the third clause of claim 1—a "forefoot-enveloping and gripping, elastic slipper sock"—and its presence *vel non* in the accused shoes. Both lines of accused shoes include what Nike refers to as an "inner sleeve." In the Huarache shoe, shown below, the inner sleeve envelops the wearer's ankle and heel regions, and extends over the top of the instep, below the laces.

1. In the district court proceedings, both Wolverine and its subsidiary, Brooks Shoe, Inc., were designated as plaintiffs. The subsequent appeal to this court was taken solely in the name of Wolverine, however.

The Dynamic Fit shoe, shown below, employs an inner sleeve shaped somewhat like an addition symbol, which envelops the wearer's instep but not the wearer's ankle or heel.

It is undisputed that the inner sleeves in the accused shoes do not encompass the wearer's toes.

Relying on the '531 patent specification, the district court interpreted the disputed term in claim 1, "forefoot-enveloping," as limiting the claimed slipper sock to one that envelops the wearer's toes, thereby precluding literal infringement by Nike's shoes, which have toeless inner sleeves. In addition, the district court interpreted other language of the disputed clause—"said elastic slipper sock ... free to grip onto a foot in said cavity independent of said upper"—as requiring the slipper sock to be "substantially unattached to said shoe upper."[2] Concluding that the degree of attachment in the accused shoes was, as a matter of law, too significant to be characterized as "substantially unattached," the district court held that

---

2. In reaching this interpretation, the district court noted dependent claim 2 of the '531 patent, not at issue in this appeal, which recites:

2. The shoe in claim 1 wherein said elastic slipper sock is substantially unattached to said shoe upper to be generally free to stretch and move relative to said upper.

the absence of this limitation alternatively precluded a finding of literal infringement. Lastly, the district court interpreted the term "elastic" to exclude Nike's inner sleeves from the literal scope of claim 1. Nike's inner sleeves are made from neoprene with a lycra liner. With regard to the doctrine of equivalents, the district court concluded that the claimed and accused shoes lacked substantial identity in both function and the way in which the function is performed. Accordingly, the district court granted Nike's motion for summary judgment that its accused shoes did not infringe the '531 patent, either literally or under the doctrine of equivalents.

## DISCUSSION

### A.

A grant of summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576–77, 12 USPQ2d 1382, 1383 (Fed.Cir.1989). In other words, summary judgment is appropriately granted in favor of the moving party where no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We review a district court's grant of summary judgment *de novo*. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 24 USPQ2d 1373, 1377 (Fed. Cir.1994). Thus, in deciding whether the district court properly granted summary judgment of non-infringement, we must decide for ourselves whether a reasonable factfinder could find that Nike's accused shoes infringed the '531 patent. *See London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538, 20 USPQ2d 1456, 1458 (Fed.Cir.1991).

Determining whether a patent claim is infringed requires a two-step inquiry: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device...." *Carroll Touch, Inc. v. Electro Mechanical Sys.*, 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir.1993). In the first step, construing

the claim, unless the specification or the file history indicates that the inventor intended otherwise, a claim term will be accorded its ordinary and accustomed meaning. *Id.* at 1577, 27 USPQ2d at 1840.

In comparing the properly construed claim with the accused product, the second step of the inquiry, Wolverine, as assignee of the '531 patent, at trial would bear the burden of proving by preponderant evidence that every limitation set forth in the asserted claim is found in the accused product, either literally or by a substantial equivalent. *Johnston*, 885 F.2d at 1577, 12 USPQ2d at 1384. A "substantial equivalent" may be found in the accused device, under appropriate circumstances, if it performs substantially the same function in substantially the same way to achieve substantially the same result. *Corning Glass Works v. Sumitomo Elec. U.S.A. Inc.*, 868 F.2d 1251, 1260, 9 USPQ2d 1962, 1969 (Fed.Cir.1989).

### B.

Wolverine argues that the district court committed reversible error by interpreting the "forefoot-enveloping" limitation to require that the claimed slipper sock envelop the wearer's toes. This interpretation, of course, led to the holding that the accused Nike shoes, with their inner sleeves that do not envelop the toes, did not infringe claim 1 of the '531 patent. In support of its position, Wolverine asserts that the '531 patent does not clearly define "forefoot" as either including or excluding the wearer's toes. Wolverine notes further that both parties submitted extrinsic evidence in support of their respective proffered meanings of the term "forefoot." Under these circumstances, Wolverine argues, the district court improperly resolved a genuine issue of material fact (i.e., the meaning of "forefoot") when it interpreted claim 1 on a summary judgment motion. Rather, Wolverine continues, because extrinsic evidence was "necessary" to understand the meaning of a claim term, the district court was required to deny summary judgment and leave the construction of the claim to the factfinder under appropriate instruction.

Wolverine's arguments are without merit. To begin with, claim construction is a question of law amenable to summary judgment; a "mere dispute over the meaning of a term does not itself create an issue of fact." *Johnston*, 885 F.2d at 1579, 12 USPQ2d at 1385.[3] In any event, we discern no error in the district court's construction of claim 1 as requiring the slipper sock to envelop the wearer's toes. The recitation in claim 1 that the slipper sock "encompass[ ] the forepart of said cavity," indicates a meaning in which the slipper sock occupies the entire forward part of the cavity, thereby enveloping the wearer's toes. Although the patentee is free to define his claim terms in a manner inconsistent with their ordinary meaning, "he must set out his uncommon definition in some manner within the patent disclosure." *Intel-

*licall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387–88, 21 USPQ2d 1383, 1386 (Fed. Cir.1992). Wolverine concedes that "forefoot" is not defined in the '531 patent as excluding the wearer's toes and can point to nothing in the patent that supports its meaning of the term. To the contrary, the '531 patent contains several passages that buttress the district court's conclusion that the term "forefoot" includes the toes, including the following:

> The forefoot elastic slipper sock extends throughout the forepart of the shoe *to totally encompass the forepart of the foot.* [Col. 1, lines 65–67 (emphasis added) ]

> This elastic [slipper sock] extends *throughout the entire forepart of the shoe . . . .* [Col. 3, lines 45–47 (emphasis added) ]

**3.** Contrary to Wolverine's contention, the district court did not hold that extrinsic evidence was "necessary" to properly construe claim 1. Rather, the court decided that, in interpreting the claim, there was "no need to go outside the 'four corners' " of the '531 patent. We do not believe that the district court erred in this case in concluding that it was not required to resort to extrinsic evidence to construe the term "forefoot."

In addition, both figures of the '531 patent that depict embodiments of the claimed slip-per sock (figures 2 and 4, below) show the sock (16) enveloping the toes:

FIG. 2

FIG. 4

Because the district court did not err in its claim construction and because it is undisputed that Nike's inner sleeves do not envelop the wearer's toes, we hold that no reasonable factfinder could find that the Nike shoes literally infringe claim 1 of the '531 patent.

Wolverine asserts two additional reasons why the district court's holding of no literal infringement as a matter of law constitutes reversible error: (i) the district court improperly read an extraneous limitation into claim 1 from non-asserted dependent claim 2 by interpreting the "free to grip onto a foot ... independent of said upper" language of claim 1 as requiring the slipper sock to be "substantially unattached to said shoe upper" (claim 2); and (ii) the district court erred in holding that the accused shoes' inner sleeve, which is made from neoprene with a lycra liner, did not satisfy the "elastic" limitation of

claim 1.[4] Assuming that the district court erred as claimed, the errors were harmless in view of our holding above that at least one limitation of claim 1—the "forefoot-enveloping" limitation—is absent from the accused shoes. If an express claim limitation is absent from the accused product, there can be no literal infringement as a matter of law. *See Johnston,* 885 F.2d at 1580, 12 USPQ2d at 1386.

■ We also affirm the district court's grant of summary judgment of non-infringement under the doctrine of equivalents.

> [I]n applying the doctrine of equivalents, each limitation must be viewed in the context of the entire claim.... "It is ... well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." ... To be a "substantial equivalent," the element substituted in the accused device for the element set forth in the claim must not be such as would substantially change the way in which the function of the claimed invention is performed.

*Perkin–Elmer Corp. v. Westinghouse Elec. Corp.,* 822 F.2d 1528, 1532–33, 3 USPQ2d 1321, 1324–25 (Fed.Cir.1987) (citation omitted), *as cited in Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 935, 4 USPQ2d 1737, 1739–40 (Fed.Cir.1987). In this case, Nike's inner sleeve—"the element substituted in the accused device" for Wolverine's slipper sock—substantially changes "the way in which the function of the claimed invention is performed."

Assuming that the slipper sock in the claimed shoe and the inner sleeve of the accused shoe perform the same function—keeping the shoe "in tune" with the wearer's foot—the substantially different way in which that function is performed compels a conclusion of no equivalent infringement as a matter of law. The '531 patent clearly specifies that the slipper sock performs its function by "stretching momentarily away from the shoe as necessary, but almost immediately bringing the shoe into total conformity with the foot." Col. 4, lines 24–27. In view of this clear statement, there can be no genuine dispute that the claimed slipper sock is designed to perform its function by allowing the wearer's foot to move, at least initially, independently of the shoe's upper. In contrast, the district court concluded, as a matter of undisputed fact, that Nike's accused shoes "work[ ] to secure the foot to the shoe's upper." In other words, the inner sleeve in Nike's accused shoes is designed to perform its function by *preventing* the wearer's foot from moving independently of the shoe's upper. Wolverine does not dispute this fact on appeal.[5] Accordingly, based on the significantly different way in which the claimed and accused devices operate, we hold that no reasonable factfinder could find infringement under the doctrine of equivalents. *See London,* 946 F.2d at 1540, 20 USPQ2d at 1460.

■ Finally, because we have concluded that Nike's accused shoes do not infringe claim 1 of the '531 patent as a matter of law, it follows that claims 4 and 5, which depend from claim 1, also are not infringed. *See Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546, 1553, 10 USPQ2d 1201, 1208 (Fed. Cir.1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed").[6] Consequently, we need not decide whether the district court erred in holding that Nike's accused shoes did not meet the additional limitation of claim 4 requiring that the inner

---

4. Nike apparently agrees that the district court erred with regard to the "elastic" limitation, as evidenced by its statement that "NIKE is not asking [this court] to affirm the district court's judgment on this basis."

5. Instead, Wolverine disputes the district court's statement of fact that "[Wolverine's patented] design allows the foot to move independently of the shoe's upper." However, in view of the clear statement to this effect in the '531 patent, noted above, Wolverine's contradictory litigation-in-

duced pronouncements are insufficient to raise a genuine issue of material fact on this point. *Cf. Lear Siegler, Inc. v. Aeroquip Corp.,* 733 F.2d 881, 889, 221 USPQ 1025, 1031 (Fed.Cir.1984) ("The litigation-induced pronouncements of [the] inventor ... have no effect on what the words of [the patent] document in fact do convey ... to the public.").

6. *Cf. Wilson Sporting Goods v. David Geoffrey & Assoc.,* 904 F.2d 677, 14 USPQ2d 1942 (Fed.Cir. 1990).

member bottom "extends to the front of the heel."

## CONCLUSION

Because the district court did not err as a matter of law in construing the "forefoot-enveloping" limitation of claim 1, and because there are no genuine issues of material fact and Nike is entitled to judgment as a matter of law, we affirm the district court's grant of summary judgment of non-infringement of the '531 patent by Nike's accused shoes.

## COSTS

Each party shall bear its own costs.

AFFIRMED.