**ANGELO MONGIELLO'S CHILDREN, LLC, Plaintiff,**

v.

**PIZZA HUT, INC., Defendant.**

No. 95 CV 4601.

United States District Court, E.D. New York.

Aug. 31, 1999.

---

Thelen Reid & Priest LLP, (Barry G. Magidoff, Paul J. Sutton, of counsel), New York City, for plaintiff.

Sidley & Austin, (Maxim H. Waldbaum, Lora A. Moffatt, of counsel), New York City, Stein, Ray & Conway, (Robert J. Harris, Jeffrey H. Winick, of counsel), Chicago, IL, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff Angelo Mongiello's Children, LLC, brought this action alleging patent infringement against defendant Pizza Hut, Inc. The court has jurisdiction under 28 U.S.C. § 1338, giving district courts jurisdiction over claims for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

The complaint alleges that defendant's method for making stuffed-crust pizzas, in use between March of 1994 and at least July of 1996, infringed plaintiff's method for making pizza claimed in United States Patent No. 4,661,361 dated April 28, 1987 (the '361 patent).

Defendant now moves for summary judgment on two grounds, non-infringement and invalidity of the '361 patent. Plaintiff cross-moves for partial summary judgment of infringement, and also moves to strike certain documents submitted by defendant in support of its motion.

The record shows, in substance, the following. Unless otherwise stated, the facts are undisputed. On April 28, 1987 the United States Patent Office issued to plaintiff the '361 patent entitled "Method for Making a Pizza" (the claimed method) containing fifteen "method claims" for making pocketed crust pizza.

In essence, plaintiff's method is to create multiple, individually sealed pockets made of dough that are filled with cheese (or other ingredients) and enclosed within the outer rim of a pizza crust or placed on a portion of the pizza crust. Tomato sauce and cheese covers the rest of the pie.

Method claims 1–3 and 11–13 are at issue in defendant's motion; plaintiff's motion addresses claims 1–3 and 10. The claims describe two basic methods: one uses dough pulled over from the edge of the crust to cover the fillings and form the pockets; the other places a separate piece of dough, not from the edge, over the fillings to form a pocket. The claims read as follows:

1. A method of making a pizza comprising the steps of:

(a) forming a generally flat dough base;

(b) placing a plurality of separated individual food portions on the dough base such that, when the dough base is cut into substantially equally sized portions, each individual food portion is located upon a portion of each pie;

(c) covering each food portion with an unbaked dough section of sufficient dimensions to cover said food portion thereby forming a separate closed pocket about each food portion;

(d) covering the portions of the dough base which are not covered by said closed pockets with a layer of tomato sauce and cheese to form an unbaked pizza product; and

(e) baking the unbaked product to obtain a pizza.

2. A method according to claim 1 wherein the placing step includes the step of uniformly locating the individual food portions upon the dough base.

3. A method according to claim 1 wherein

(a) the placing step further includes the step of locating the individual food portions adjacent an outside perimeter of the dough base;

(b) the covering step includes the step of folding an outside peripheral strip of the dough base over the food portions; and

(c) the step of forming a plurality of closed pockets includes the steps of

(i) pinching an edge of the peripheral strip to the dough base, and

(ii) pinching to the dough base areas of the peripheral strip between the food portions.

10. A method according to claim 1 wherein the layer of tomato sauce and cheese further comprises a topping.

11. A method of making a pizza comprising the steps of:

(a) forming a generally flat dough base;

(b) forming a plurality of closed pockets each pocket enclosing a portion of food;

(c) placing the closed pockets on portions of the dough base;

(d) covering portions of the dough base which are not covered by said closed pockets with a layer of tomato sauce and cheese to form an unbaked pizza product; and

(e) baking the unbaked product to obtain a pizza.

12. A method according to claim 11 wherein the placing step includes the step of uniformly distributing the pockets about at least a portion of the base.

13. A method according to claim 11 wherein the layer of tomato sauce and cheese further comprises a topping.

In early 1988 Anthony Mongiello sent defendant a copy of the '361 patent, offering a license under it. Defendant responded by letter dated May 17, 1988 that it was "not a new concept for Pizza Hut" and rejected the offer.

In March of 1995 defendant launched a cheese "Stuffed Crust Pizza." The manager's guide dated February 1995 describes defendant's method as follows:

- Place thumbs on edge of dough.

- Press dough ridge up the sides of pan.

—Dough must extend just above rim of pan (1/4″)

- Evenly space five pieces of thawed mozzarella string cheese approximately a thumb's width apart along the outside edge of the dough

—Place close to bottom of pan where edge meets.

- Use thumb and index fingers to stretch and fold edge of the dough over string cheese and press firmly to seal.

—Dough overlap should be visible on both sides of thumb.

—Keep stuffed edge at score line etched in pan to keep dough in round shape.

- Use thumbs to press and seal overlapped dough to bottom edge.

- Use thumbs to push stuffed edge out to edge of pan....

- [after applying sauce, toppings, and baking] [a]ll Stuffed Crust Pizzas are cut into 8 slices. If cheese is leaking through small hole in crust, begin cutting pizza at that spot.

An objective of the method was to create "cheese pull," which means that the cheese within the crust joins together during baking so that the consumer receives "cheese in every bite."

Defendant launched a pepperoni and cheese Stuffed Crust Pizza in September of 1995, which contained a continuous layer of pepperoni slices beneath the five pieces of cheese within the outer edge of the pizza. Plaintiff concedes that the pepperoni and cheese version does not infringe the '361 patent.

At some time after July 18, 1996, defendant began using a new formulation of string cheese that was softer and longer, and that was to be placed end to end around the edge of the pizza to make sure that customers would receive "cheese in every bite." Plaintiff concedes that defendant's current method using the longer pieces of cheese touching end-to-end in a continuous ring around the circumference of a pizza crust does not infringe on the '361 patent, but disputes when the new method was actually put into place.

Shortly after learning of the 1995 launch of defendant's Stuffed Crust Pizza, Anthony Mongiello and his brother Lawrence cut open Stuffed Crust Pizzas purchased from defendant's restaurants. They say

that when they cut into the crusts, they observed "pockets" of mozzarella cheese and spots where "a dough wall separated adjacent mozzarella strings."

Plaintiff submitted a video showing the Mongiello brothers cutting through examples of defendant's Stuffed Crust Pizza and discovering such "pockets." The Mongiellos were not able to find the so-called pockets easily, but had to cut through at several places before they found an offending bit of dough, and the "pockets" did not appear consistently throughout the samples shown.

Based on their observations of randomly occurring dough walls dividing cheese within the crust of defendant's baked product, the Mongiellos believed that the method defendant used to make Stuffed Crust Pizzas infringed on their claimed method. They filed this action for patent infringement on November 8, 1995.

### The Prosecution History of the '361 Patent

On June 25, 1984 Anthony Mongiello and his brother Lawrence filed a patent application for the claimed method, the pizza shells prepared in accordance with the claimed method, and the apparatus used in making the pizza shells. As originally filed, the application contained 24 claims. Claims 1–9 pertained to the product—a pizza shell topped with enclosed food portions in a variety of configurations. Claims 10–13 disclosed a template and pinching apparatus to be used to make the shells. Claims 14–24 disclosed the method by which the claimed products were to be made.

With a focus on the proposed method, the descriptive summary included in the initial application reads as follows:

> The present invention is a pizza shell and a method of making a pizza shell. The shell comprises a dough base, a plurality of closed pockets uniformly distributed about at least a portion of the base, and a plurality of food portions held within those closed pockets. The shell is made by forming a generally flat dough base, placing a plurality of food portions on that base, covering the food portions, and forming a plurality of closed pockets to enclose each food portions within a separate closed pocket .... [the closed pockets] facilitate cutting that portion into a plurality of substantially equally sized pieces with one pocket on each piece.

The specification includes a description of a variety of pizza shells with closed pockets in varying positions and size, and says as to the forming of the pockets:

> With all the preferred embodiments of the pizza shells discussed above, the ends of the pizza pockets are pinched downward to the bases of the shells. These pinched ends of the pockets facilitate cutting the pizza shells into a plurality of equally sized pieces, by providing a visual guide as to where the pizza shells should be cut to accomplish this.

The specification says that the general method of making a pizza with pockets of enclosed food portions "may be accomplished in a number of specific ways," and lists two examples, one whereby the dough is pulled over from the edge, and another whereby dough pieces separate from the edge are placed on top of food portions.

As for the first method, the specification says that "the inside circumferential edge of this strip and portions of the strip between adjacent food portions are then pinched to [the base] to form closed pockets enclosing [the food portions]". In the second method, "outside edges of those cover pieces are pinched to the dough base to form a plurality of closed pockets."

Other than pinching, the specification gives no guidance on alternate means to form the closed pockets.

On May 14, 1985 the examiner rejected the "pizza shell" claims, 1–9, as obvious under 35 U.S.C. § 103 and unpatentable over the prior art practiced by Giordano and Chapman. The examiner said:

Giordano discloses a multi layer pizza product. The instant claims differ primarily in that they call for a plurality of closed pockets distributed about a portion of the base. However, this difference appears to be no more than a matter of shape and/or form so constructed as to placate an individual's whim or fancy which is considered to be an obvious matter of choice.... Chapman discloses a dough product constructed of a plurality of enclosed sections (pockets) which may be filled. The instant claims differ primarily in that they call for a pizza product in lieu of a pastry product taught by Chapman. However, pizza products in enclosed configurations are old as taught by Giordano. Thus, with this prior art before him, it would be obvious to one skilled in the art, to utilize pizza materials rather than pastry materials to obtain the present product.

But the examiner did not reject the method claims, 14–24, saying that they "are free of the prior art."

The Mongiellos filed an amendment on August 8, 1985, which canceled the pinching apparatus and template claims, amended the product claims to cover an unbaked pizza shell only, and added claims 25–29, covering the pizza shells produced by the claimed methods. The amended application also disclosed references to the prior art of which the Mongiellos had become aware since the first application.

This time, on December 16, 1985, the examiner rejected all the claims, including method claims 14–24, as unpatentable over the prior art. In rejecting the method claims, the examiner said:

> Claims 14 to 24, previously indicated as free of the prior art, are rejected under 35 U.S.C. § 103 as being unpatentable over De Vecchio or Chapman in view of Persi or Tangel.

> Each primary reference discloses a method of forming a dough base, placing a filling thereon and covering the same whereby closed pocket(s) are formed. The instant claims differ primarily in

that they are directed to a pizza product. However, pizza products in enclosed configurations are old as evidence by Persi and Tangel. Thus, to utilize the method taught by any one of the primary reference in preparing enclosed pizza products as taught by Persi and Tangel would be obvious manipulations in absence of unexpected or unobvious functions and/or results for same....

> Claims 14 to 18 are rejected under 35 U.S.C. § 103 as being unpatentable over Woman's Day Encyclopedia of Cookery.

> The reference discloses a method of forming a flat dough base, placing a food portion thereon and covering the food portions. The reference further discloses pinching (crimping) the edges of the dough to form a filled pocket. The instant claims differ primarily in that they call for a pizza product. However, it is not seen that this difference constitute[s] unobvious subject matter.

The examiner also found that claims 14, 20 and 22 to 24 are "indefinite in that it is not certain what the 'forming' step encompasses."

The Mongiellos filed a second amendment on April 9, 1986, amending both their method and product claims to cover the pizza shell, whether baked or unbaked, the combination of a pizza (not merely a "shell") and a "plurality of closed pockets" enclosing individual food portions "such that when the pizza is cut into substantially equally sized portions, each individual food portion is located upon a portion of each piece," and requiring that tomato sauce and cheese cover areas of the pizza not covered by pockets.

The remarks accompanying the amendments, remarks that were "in accord" with what the applicants represented during the interview with the examiner, summarized the proposed method as follows:

> The invention also relates to a method for making a pizza comprising the steps of forming a generally flat dough base, placing of plurality of separated individ-

ual food portions on the dough base such that when the dough base is cut into substantially equally sized portions, each individual food portion is located upon a portion of each equally sized piece, covering each food portion with an unbaked dough section of sufficient dimensions to cover the food portion thereby forming a separate closed pocket about each food portion, covering the portions of the dough base which are not covered by the closed pockets with a layer of tomato sauce and cheese to form an unbaked pizza product, and baking the unbaked product to obtain a pizza.

The remarks also explained that the method claims rejected as being indefinite as to the "forming" step were now amended "to clearly define that the step of covering the food portions with dough sections thus forms the pocket around or about the food portion."

On May 10, 1986 the examiner rejected the product claims as obvious, but allowed the method claims. On September 26, 1986 the Mongiellos filed an amended application canceling the product claims and on April 28, 1997 the Patent Office issued the '361 patent.

### Legal Criteria

*Summary Judgment*

According to Rule 56 of the Federal Rules of Civil Procedure, the moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

The substantive law governing the case will determine those facts that are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is warranted only if "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.*

Moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

*Patent Infringement*

■ A patent infringement analysis proceeds in two steps. The court (1) construes the claim to determine its scope and meaning, and (2) compares the properly construed claim to the accused device or process to determine whether all of the claim limitations are present either (a) literally or (b) by a substantial equivalent. *See Renishaw PLC v. Marposs Societa' per Azioni* 158 F.3d 1243, 1247–48 (Fed. Cir.1998).

The court has the "power and obligation to construe as a matter of law the meaning of language used in the patent claim." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979, (Fed.Cir.1995), *aff'd* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

■ To ascertain the meaning of a claim, the court first looks to intrinsic evidence—the claim language, the specification, and the prosecution history. *Id.* at 979–80. Such evidence constitutes the public record of a claim. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed.Cir.1996). If an analysis of the intrinsic evidence resolves any ambiguity in the construction of the claim language, consideration of extrinsic evidence, such as expert testimony, is improper. *Id.*

### Claim Construction

Defendant argues that its method of making Stuffed Crust Pizza does not infringe the '361 patent, either literally or through substantial equivalence, because it

does not perform what it says are three required elements of the claimed method:

(1) The "cutting step" of claim 1: "when the dough base is cut into substantially equally sized pieces, each individual food portion is located upon a portion of each piece."

(2) The "forming step" of claim 1: "forming a separate closed pocket about each food portion."

(3) The "placing step" of claim 11: "placing the closed pockets on portions of the dough base."

*The "cutting" step*

■ Claim 1 of the '361 patent states, in relevant part:

1. A method of making a pizza comprising the steps of ... (b) placing a plurality of separated individual food portions on the dough base such that, when the dough base is cut into substantially equally sized portions, each individual food portion is located upon a portion of each piece....

Defendant says that the phrase "such that, when the dough base is cut into substantially equally sized portions, each individual food portion is located upon a portion of each piece" is an essential limitation of the claim requiring that the pizza be cut in a specific manner. Plaintiff contends that the phrase should be construed as an optional step that merely explains where the food portions should be placed, and says that the phrase really means: "if the dough base were cut into equal slices, a food portion would be on each slice." Plaintiff argues that cutting the pizza such that there is an individual filled pocket on each piece is not required, but that "it is enough that it is *possible* to do so."

But the plain language of the claim says "when," not "if." If the patent applicants had wanted the language to be hypothetical, they would have drafted it in that manner.

The ordinary meaning of "when" in "when the dough base is cut" is that at some point, the dough base *will* be cut, not that it *may* be cut. Plaintiff's argument that "when" cannot actually mean "when" because the *unbaked* dough base is never cut is without merit; the applicants expressly refer to an unbaked dough base in other parts of the patent claims, but not in the language at issue.

■ Where the plain import of the language is clear, the court will not engage in speculative interpretation. *See Digital Biometrics, Inc. v. Identix, Inc.,* 149 F.3d 1335, 1344 (Fed.Cir.1998) (actual words of claim are the controlling focus and the ordinary meaning of the claim language controls); *see also White v. Dunbar,* 119 U.S. 47, 52, 7 S.Ct. 72, 74–75, 30 L.Ed. 303 (1886) ("The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.").

■ To determine whether the inventor used an ordinary term with a special meaning, the court reviews the specification and prosecution history. *CVI/Beta Ventures, Inc. v. Tura LP,* 112 F.3d 1146, 1153 (Fed.Cir.1997).

If the applicants wanted "when" to mean "if," they should have clearly so stated in the specification or file history. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996). But the applicants never argued in the specification or during prosecution that cutting the pizza to preserve the pockets on each slice was merely optional. *See Laitram Corp. v. Morehouse Indus., Inc.,* 143 F.3d 1456, 1463 (Fed.Cir. 1998) (noninfringement where nothing in the written description suggests patentee's interpretation).

On the contrary, the applicants repeatedly stressed that their invention featured fillings enclosed in sealed pockets, and that the pockets should be preserved by cutting pieces around them. For exam-

ple, the summary of the invention states that "because the closed pockets are uniformly distributed about at least a portion of the base of the pizza shell, those pockets facilitate cutting that portion into a plurality of substantially equally sized pieces with one pocket on each piece." *See Laitram,* 143 F.3d at 1463 (noninfringement where patentee recited disputed limitation in the summary of the invention).

The description of the invention states that the "pinched ends of the pockets facilitate cutting the pizza shells in a plurality of equally sized pieces, by providing a visual guide as to where the pizza shells *should* be cut" (emphasis supplied); and "cutting the pizza shells ... into a plurality of pieces without cutting through the interior of pockets ... insures that any food or filling in those pockets does not accidentally spill from those pockets as the individual pizza pieces are cut and handled."

The specification thus teaches that the objective of having sealed, closed pockets of filling on the pizza is so that the filling will be neatly contained within one pocket in each serving. Cutting the pizza in the manner specified in claim 1 is essential to that purpose. *See Applied Materials, Inc. v. Advanced Semiconductor Materials, Inc.,* 98 F.3d 1563, 1574 (Fed.Cir.1996) ("[a]lthough patent claims are not ordinarily limited to the inventor's purpose, when that purpose is included in the claims it serves as a limitation of the claimed invention").

Furthermore, if the method was not limited by the cutting feature, there would be no advantage, to the consumer, of having *sealed* pockets of fillings on top of a pizza. When asked by the court during oral argument why such sealed pockets would be necessary if the patent did not require that the pizza be cut to preserve the pockets, plaintiff responded: "it does make it easier, for example, to make the pie." But plaintiff presents no evidence that that explanation was ever contemplated by the inventors. Ease of preparation as an ad-

vantage of having sealed pockets was not described in the specification, nor was it argued during the prosecution of the patent or in plaintiff's memoranda to the court.

Put simply, if cutting around the sealed pockets so that the contents do not spill out is not a required element of the patent, plaintiff's invention would make no sense. Construing the step of cutting the pizza so that the individual, sealed pockets are on each slice as an essential limitation of the invention preserves the "internal coherence" of the patent. *See Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 389, 116 S.Ct. 1384, 1395, 134 L.Ed.2d 577 (1996) (task of the court is to determine whether a definition fully comports with the specification and claims and will preserve the patent's internal coherence).

Finally, the prosecution history shows that the applicants added the disputed language to the patent claim to overcome patent examiner's rejections. On December 16, 1985, the examiner rejected the pending method claims 14–24 as "obvious manipulations [of the prior art] in [the] absence of unexpected or unobvious functions and/or results for same," and also rejected claims 14–18 as differing from the prior art "primarily in that they call for a pizza product" but that "it is not seen that this difference constitute[s] unobvious subject matter."

In response, the applicants amended prosecution claim 14(b) to recite: "placing a plurality of *separated individual* food portions on the dough base *such that, when the dough base is cut into substantially equally sized portions, each individual food portion is located upon a portion of each piece*" (amendments emphasized). That language was brought to the examiner's attention in the remarks accompanying the amendments, which were "in accord" with the applicants' interview with the examiner. The claims were allowed in the next office action.

■ The court concludes that the language was amended to provide the unobvious or unexpected function and/or results that the examiner demanded by describing a method to create a pizza with an enclosed pocket on each slice. Where language is added to overcome a rejection that an invention was obvious under the prior art, it is deemed to be an essential part of the invention. *See Quality Semiconductor, Inc. v. Pericom Semiconductor, Inc.*, No. C–95–01785, 1998 WL 118186 at *6 (N.D.Ca. March 2, 1998).

*The "forming" step*

■ Claim 1 of the '361 patent states, in relevant part:

1. A method of making a pizza comprising the steps of: ... (c) covering each food portion with an unbaked dough section of sufficient dimensions to cover said food portion thereby forming a separate closed pocket about each food portion.

Defendant says that the "forming step" of claim 1 requires pinching the dough cover pieces to the dough base, including between adjacent food portions, to form closed pockets. Plaintiff contends that pinching is not required in claim 1, but that simply covering the food portions with dough is sufficient to form the closed pockets.

■ The interpretation of a disputed claim term requires reference to other claims, and, unless there is "a clear indication to the contrary" a term must be interpreted consistently in all claims. *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed.Cir.1995). Claims 3 and 4 of the '361 patent, which are dependent on claim 1, expressly describe a "forming" step that is separate from "covering," and involves pinching dough sections together, including in between food portions.

Plaintiff concedes that "forming" is a separate step from "covering" in its memorandum that claim 3 further defines "the placing step and covering step including the *step of forming closed pockets*" (emphasis supplied).

■ Plaintiff argues that interpretation of the term "forming" with reference to other claims is improper under the doctrine of claim differentiation, which requires a difference in scope among the claims. But the doctrine of claim differentiation applies only where a claim construction would render another claim superfluous. *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir.1998). Where there are other differences between the claims, the element at issue may be construed to cover "the same subject matter" that is expressed differently in other claims. *Tandon Corp. v. U.S. International Trade Commission*, 831 F.2d 1017, 1023 (Fed.Cir.1987).

Claim 1 recites no particular method of covering; claim 3 recites a covering step that involves folding an outside peripheral strip of the dough base over the food portions; and claim 4 recites a different covering step that involves covering food portions with an unbaked dough section separate from the dough base. Because there are differences in the recitation of the "covering" step in claims 1, 3, and 4, the "forming" step may be construed to "cover the same subject matter" in all three claims.

Although the specification says that the general method of making a pizza with pockets of enclosed food portions "may be accomplished in a number of specific ways," the only "ways" it refers to involve making the dough covers, and not the formation of the pockets. In fact, the specification discloses no method of forming a pocket other than by pinching the outside edges of the cover piece to the dough base.

■ Where a patent specification suggests only one meaning of a claim limitation, it may be construed no more broadly. *See Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed.Cir.1998) ("claims may be no broader than the supporting

disclosure, and ... a narrow disclosure will limit claim breadth").

Plaintiff's suggestion that the forming step in claim 1 may include merely touching the two dough surfaces together to form a seal if inherently "sticky" dough is used is completely without support in the specification and thus cannot be considered in construing the claim.

The prosecution history also supports the construction of "forming" as requiring pressure placed around the pocket area. In the December 16, 1985 office action the examiner observed that the claimed method was similar to the prior art by requiring "pinching (crimping) the edges of the dough to form a filled pocket." The amendments that followed did nothing to correct that interpretation.

Plaintiff also argues that the photograph of the "forming" step in the record, number five, shows "a first pocket being formed" by merely folding the dough over without pinching. But photograph number seven shows the "completion" of the process, and the pinched edges of the pockets in that photograph are clearly visible.

The court concludes that the "forming" step is an affirmative step separate from "covering," and requires pinching dough areas to the dough base, including in between food portions. Merely draping the dough over the filling is insufficient to perform the claim.

*The "placing step"*

■ Claim 11 states, in relevant part:
11. A method of making a pizza comprising the steps of:
(a) forming a generally flat dough base;
(b) forming a plurality of closed pockets each pocket enclosing a portion of food;
(c) placing the closed pockets on portions of the dough base....

Defendant says this step must be construed to require that the closed pockets are formed separately from the dough base and then placed upon the base. Plaintiff argues that the word "on" in 11(c)

can encompass "pushing" or "moving" the folded dough pocket around, where the dough is not made of material separate from the base.

The plain meaning of the terms do not permit plaintiff's interpretation. "Placing on" does not mean "pushing" or "moving around." *See Senmed, Inc. v. Richard–Allan Medical Indus., Inc.,* 888 F.2d 815, 819–20 n. 8 (Fed.Cir.1989) ("there is nothing ambiguous or linguistically obscure about 'on' as used in the present claim") (construing "on" in its ordinary sense of "upon" or "on the surface," "on it"). In addition, pushing pockets of dough already attached to the dough base around is not disclosed anywhere in the specification, whereas creating closed pockets separately from the based "and then placed thereon" is disclosed.

The court concludes that claim 11(c) requires that the dough pockets be formed separately from the dough base, and then placed upon that base.

*Literal Infringement*

■ In order to find literal infringement, the defendant must practice each and every element of the claimed method. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1581 (Fed.Cir.1996).

■ Defendant's method, as described in the February 1995 manager's guide and the affidavit of Patricia Scheibmeir, a manager in defendant's research and development department, does not practice the "cutting" limitation as construed by the court. Although the Stuffed Crust Pizzas in question used five separate pieces of cheese, separated by a thumb's width, the instructions direct that the pizza be cut into eight slices using a "rocker blade," which cuts pizzas into an even number of slices. It is thus impossible for individual portions of cheese to be located on each portion of defendant's pizza.

Since defendant does not practice one of the essential limitations of the '361 patent, the court need not consider the other limi-

tations before making a finding of no literal infringement.

### Doctrine of Equivalents

■ A method patent may be infringed if the accused product "contains elements identical or equivalent to each claimed element of the patented invention." *Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 40, 117 S.Ct. 1040, 1054, 137 L.Ed.2d 146 (1997). The focus of inquiry is whether or not a substitute element "matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element." *Id.; see also Sage Products, Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1429 (Fed.Cir.1997) ("[a]n accused element cannot perform substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed element if it does not perform at least a function equivalent to that expressly recited in the claimed element").

■ The function of plaintiff's cutting limitation—to preserve an individual food pocket on each slice—is the exact opposite of that of defendant's cutting step, which is to create a product with "cheese in every bite." Rather than cutting at points where gaps happen to occur between the five cheese pieces in the crust, defendant's method directs: "if cheese is leaking through small hole in crust, begin cutting pizza at that spot." Defendant's cutting step is thus not substantially equivalent to plaintiff's.

Nor does defendant's method include an element equivalent to plaintiff's method of forming pockets. Defendant's method does direct that the dough overlap from the crust should be pressed down with the thumbs over the cheese, but there is no direction that the overlap be pinched around the cheese strings to form closed pockets. In fact, the function of enclosing cheese strings within the dough overlap in defendant's method was to create "cheese pull" a condition where the cheese in the crust of adjoining pieces joins together after the pizza is cut. That the cheese formulation in use at the time did not consistently achieve "cheese pull," is irrelevant. *See Zygo Corp. v. Wyko Corp.,* 79 F.3d 1563, 1569 (Fed.Cir.1996) ("[a] finding of equivalency just because the same result is achieved is a flagrant abuse of the term 'equivalent'"), *quoting Burr v. Duryee,* 68 U.S. (1 Wall.) 531, 573, 17 L.Ed. 650 (1863).

Plaintiff, conceding that pinching may required, argues that defendant's demonstration videotape in the record shows an employee "pinch down" the dough in the spaces between the string cheese to form pockets, but the court has carefully viewed that videotape and can discern no such pinching.

Plaintiff's argument that the allegedly "sticky" dough that defendant uses which allegedly adheres on contact differs "only insubstantially" from plaintiff's required step of pinching the dough pieces together. The court finds that, even if defendant's dough were unusually sticky, and the court cannot conclude on the basis of the evidence presented that it is, the difference between deliberately forming pockets of individually sealed fillings and relying on the off-chance that the dough surfaces around the cheese strips might adhere sufficiently to form a fully-sealed pocket, is indeed substantial and precludes a finding of equivalence.

Finally, plaintiff claims that a substitute for the "placing" step in claim 11 is found in defendant's step of pushing the stuffed edge out to the edge of the pan. But the court construed the "placing" step in claim 11 to require placing an enclosed pocket formed separately from the dough base onto the base. Defendant's method contains no substantially similar element.

The court finds that defendant did not infringe the '361 patent, either literally or by substantial equivalence.

**208**

*Plaintiff's Cross–Motion for Summary Judgment*

Plaintiff cross-moves for summary judgment of infringement of claims 1, 2, 3, and 10 of the '361 patent. Plaintiff concedes that claims 2, 3, and 10 are dependent on claim 1 and further define the steps in claim 1.

 Where an accused method does not practice each and every step of the independent claim, no infringement can be found of any of its dependent claims. *Wolverine World Wide, Inc. v. Nike, Inc.,* 38 F.3d 1192, 1199 (Fed.Cir.1994).

Since the court has found that defendant's method does not infringe claim 1, plaintiff's motion will be denied.

*Defendant's Motion for Summary Judgment of Invalidity*

Since the court will grant defendant's motion for summary judgment of non-infringement, it declines to consider the motion for invalidity of the patent and will dismiss that motion as moot. *See Phonometrics, Inc. v. Northern Telecom, Inc.,* 133 F.3d 1459, 1468 (Fed.Cir.1998) (whether or not a district court considers the validity of a patent after a finding of non-infringement is discretionary).

*Conclusion*

That plaintiff concedes defendant's pepperoni and cheese pizza and its current Stuffed Crust Pizza do not infringe the '361 patent, when the only apparent difference between the method used to make those pizzas and that of the allegedly infringing pizzas is the type of filling used, indicates that plaintiff is really claiming infringement of the resulting product—pizza that does or does not have a continuous ring of filling in the crust—and not the method. But plaintiff does not have a product patent, and its method patent is not infringed simply because some examples of defendant's completed product approximate plaintiff's product. The walls of dough dividing the cheese in the crust of samples of defendant's baked product that were detected by the Mongiellos are the result of random dough closure, and not the result of defendant's deliberate method.

Defendant's motion for summary judgment of non-infringement is granted.

Plaintiff's cross-motion for summary judgment of infringement is denied.

Defendant's motion for summary judgment of invalidity of the '361 patent, and plaintiff's motion to strike certain documents in support of defendant's motion, are dismissed as moot.

So ordered.