**INNOVA/PURE WATER, INC., Plaintiff,**

v.

**SAFARI WATER FILTRATION SYS-TEMS, INC. d/b/a Safari Outdoor Products, Defendant.**

**No. 8:99–cv–1781–T–23MAP.**

United States District Court, M.D. Florida, Tampa Division.

Oct. 28, 2003.

to Innova (Doc. 1).[1] The '759 patent discloses and claims a water bottle filter assembly comprising (1) a bottle cap, (2) a filter element, and (3) a manual valve. The filter assembly seals a bottle, filters chlorine and contaminants from drinking water upon inversion of the bottle, and allows water to pour through the valve. The '759 patent specification emphasizes the desirability of "a filtering assembly for use with standard plastic water bottles, which filter assembly has optimum portability, for example being capable of being carried in a pocket, purse, fanny pack, or the like." The accused Safari product also has a cap for sealing a bottle, a filter element for filtering chlorine and contaminants from drinking water upon inversion of the bottle, and a manual valve. The filter element of the Safari product has a horizontal, annular flange at its top end designed for resting on the mouth of the bottle (the circumference of the flange is slightly wider than the circumference of the bottle mouth) and for suspending the filter element in the neck of the bottle. Screwing fully the separate bottle cap, which has internal threads, onto the corresponding threads on the exterior of the bottle neck results in contact with and pressure on the filter element, thus fixing the filter element in position for its intended purpose. Pursuant to section 284 of title 35, United States Code, Innova seeks a reasonable royalty, trebled for intentional infringement. In addition, Innova seeks to enjoin Safari from continuing the alleged infringement.

 Both parties move for summary judgment (Docs. 44 & 45). Innova asserts (1) literal infringement or, alternatively, infringement under the doctrine of equivalents of independent claims 1 and 15 and dependent claims 5, 11, and 17 through 20 of the '759 patent and (2) validity of the '759 patent pursuant to sections 102

Frank R. Jakes, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, FL, Robert A. Vanderhye, Nixon & Vanderhye, P.C., Arlington, VA, for Plaintiff.

C. Douglas McDonald, Jr., Nancy J. Faggianelli, Carlton Fields, P.A., Tampa, FL, James R. Ghiselli, Cynthia A. Mitchell, Hogan & Hartson, L.L.P., Boulder, CO, Gregory Eugene Mierzwinski, Law Office of Gregory E. Mierzwinski, Tampa, FL, for Defendant.

Terry Marcus Sanks, Beusse, Brownlee, Bowdoin & Wolter, P.A., Orlando, FL, for Movant.

### ORDER

MERRYDAY, District Judge.

Innova/Pure Water, Inc. ("Innova") alleges that Safari Water Filtration Systems, Inc.'s ("Safari") water bottle filter product (the "product") infringes United States Patent 5,609,759 (the "'759 patent"), entitled "Bottle Filter Cap" and assigned

1. Although four versions of the accused water bottle filter exist, Innova concedes that "the functional components of all four versions ... are substantially identical as far as they relate to the issues here" (Doc. 44). Accordingly, the four versions collectively are identified as the Safari "product".

and 112 of title 35, United States Code (Doc. 44). Because no infringement of a dependent claim results absent infringement of the independent claim from which it depends, Innova's claim of infringement fails unless Safari infringes independent claims 1 and 15. *See Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed.Cir.1994). Claims 1 and 15 of the '759 patent read as follows (with emphasis added):

1. A filter assembly for use with a bottle having a circular cross-section neck or open end to simultaneously cap the neck or open end and filter liquid poured out of the bottle through the neck or open end, comprising: a tube of filtering material ...; a cap for a bottle neck or end ... having first and second substantially opposite surfaces; a manual valve operatively associated with said cap ...; said tube *operatively connected* to said cap second surface at said tube second open end, and wherein said filtering material comprises a substantially continuous self-supporting, *self-venting* body of activated carbon and binder ....

...

15. A container for dispensing filtered water, comprising: a plastic bottle having an open neck ... with a cap engaging portion; a plastic cap having a bottle neck engaging portion ...; a self-supporting, *self-venting tube* of or containing filtering material ...; a manual valve operatively associated with said cap ...; said tube *operatively connected* to said cap second surface ....

Denying literal infringement of claims 1 and 15, Safari argues the absence of two claimed features. First, Safari contends that the "tube of or containing filtering

material" (the "tube") in its product is not "operatively connected" to the "cap", as required by claims 1 and 15 (Doc. 48).[2] Rather, Safari argues that, because no connection exists between the cap and the tube in its product, no possibility exists for simultaneous removal of the cap and the tube from the bottle as a "unitary device." Second, Safari contends that its product lacks the "self-venting body of activated carbon and binder" of claim 1 and the "self-venting tube of or containing filtering material" of claim 15. Safari also denies infringement under the doctrine of equivalents and argues that prosecution history estoppel bars Innova's claim of infringement by equivalence. Safari asserts the same arguments of non-infringement in support of its motion for summary judgment (Doc. 45). No dispute exists concerning the feature of the accused product that allegedly is the "tube of or containing filtering material ... operatively connected ... to [the] cap." However, the parties dispute the operation of the feature of the accused product that allegedly is the "self-venting" filtering material of claim 1 and the "self-venting tube of or containing filtering material" of claim 15.

Separately, Safari moves to strike the declarations of John E. Nohren, Jr., and Paul M. Pederson submitted in support of Innova's motion for summary judgment (Doc. 51), and Innova moves for leave both to amend the complaint (Doc. 58) and to reply in further support of the request to amend (Doc. 60). Innova opposes Safari's motion to strike (Doc. 53), and Safari opposes Innova's motions for leave to amend (Doc. 59) and for leave to reply (Doc. 62).

Determining patent infringement requires two steps. *Vitronics Corp. v. Con-*

---

**2.** Although claim 1 claims a "tube of filtering material" and claim 15 claims a "tube of or containing filtering material," Innova concedes that "for all practical purposes, the 'tube' limitation is the same in claim 15 as in claim 1, although the language is different" (Doc. 44). Accordingly, these claim elements collectively are identified as the "tube of or containing filtering material" or the "tube".

*ceptronic, Inc.,* 90 F.3d 1576, 1581–82 (Fed.Cir.1996); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir. 1995) (*en banc*), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). First, as a matter of law, the court construes the asserted claims and determines their scope. *See Vitronics,* 90 F.3d at 1582; *Markman,* 52 F.3d at 970 & 976. Second, on summary judgment, the court compares the construed claims to the accused product. *See Vitronics,* 90 F.3d at 1581–82; *Markman,* 52 F.3d at 976.

## I. CLAIM CONSTRUCTION

■ "[C]laim language must be construed as a whole and it is something of an intellectual fiction to separate the phrases of a claim as if they stood in isolation." *BOC Health Care, Inc. v. Nellcor, Inc.,* 892 F.Supp. 598, 613 (D.Del.1995); *see SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1121 (Fed.Cir.1985) (*en banc*). "[T]he focus in construing disputed terms in claim language ... is on the objective test of what one of ordinary skill in the art at the time of the invention would have understood the term to mean." *Markman,* 52 F.3d at 986.[3] The ordinary and customary meaning of claim terms governs claim construction. *See Dayco Prods., Inc. v. Total Containment, Inc.,* 258 F.3d 1317, 1327 (Fed.Cir.2001); *K–2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1362–63 (Fed.Cir.1999).[4] Adding limitations neither required by claim terms nor unambiguously required by either the specification or the prosecution history of a patent is impermissible. *See Dayco Prods.,* 258 F.3d at 1327; *K–2,* 191 F.3d at 1362–63.

■ Two categories of evidence assist with claim construction. The first category, intrinsic evidence, includes the patent claims, specification, and prosecution history. *Vitronics,* 90 F.3d at 1582. Intrinsic evidence "is the most significant source of the legally operative meaning of disputed claim language." *Vitronics,* 90 F.3d at 1582. The second category, extrinsic evidence, or evidence that is external to the patent and file history, includes expert and inventor testimony, dictionaries, and technical treatises and articles. *Vitronics,* 90 F.3d at 1584. "Extrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims." *Markman,* 52 F.3d at 981 & 986. When interpreting an asserted claim "the court should look first to the intrinsic evidence of record." *Vitronics,* 90 F.3d at 1582. Within this category of evidence, the court first "look[s] to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention." *Vitronics,* 90 F.3d at 1582. The court next reviews the specification. *Vitronics,* 90 F.3d at 1582. "Claims must be read in view of the specification.... Usually, [the specification] ... is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics,* 90 F.3d at 1582–83 (quotations omitted) ("The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication."); *Markman,* 52 F.3d at 979 ("For claim construction purposes, the description may act as a sort of dictionary

---

**3.** "In approaching claim construction, we must always be conscious that our objective is to interpret the claims from the perspective of one of ordinary skill in the art, ... not from the viewpoint of counsel or expert witnesses retained to offer creative arguments in infringement litigation." *Dayco Prods.,* 258 F.3d at 1324.

**4.** "Although the patentee is free to define his claim terms in a manner inconsistent with their ordinary meaning, he must set out his uncommon definition in some manner within the patent disclosure." *Wolverine World Wide,* 38 F.3d at 1197.

which explains the invention and may define terms used in the claims."). Although the ordinary and customary meaning of a disputed claim term is presumed correct, a different meaning "clearly and deliberately set forth in the intrinsic evidence will control." *See K–2*, 191 F.3d at 1362–63; *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed.Cir.1995).[5] The court last considers the prosecution history of the patent. *Vitronics*, 90 F.3d at 1582; *Markman*, 52 F.3d at 980. "The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Southwall Techs.*, 54 F.3d at 1576. In most instances, the intrinsic evidence alone resolves any ambiguity in a disputed claim term. *Vitronics*, 90 F.3d at 1583. Only if some genuine ambiguity persists after consideration of the intrinsic evidence, should the court resort to extrinsic evidence.[6] *Vitronics*, 90 F.3d at 1584. In other words, "evidence extrinsic to the patent and prosecution history, such as expert testimony, cannot be relied on to change the meaning of the claims when that meaning is made clear by those documents." *Southwall Techs.*, 54 F.3d at 1578.

## A. "Said Tube Operatively Connected to Said Cap"

█ Innova and Safari dispute the meaning of "said tube operatively connected to said cap" in claims 1 and 15. Safari contends that "operatively connected" requires a welded, adhesive, or similar connection for creating a "unitary device" and for enabling removal of the tube and the cap from the bottle simultaneously (Doc. 45). Based on the "common broad terminology," the dictionary, and the specification of an irrelevant patent for a faucet mounted water filter, Innova urges a broader construction of "operatively connected" to include "any type of joining or linking of [the tube and the cap] so that they operate to perform a designed function." However, Innova attempts to limit the broader construction to require the "joining or linking" of the tube and the cap only during operation of the filter assembly (Doc. 44). In other words, according to Innova, "operatively connected" "generically describes some sort of joining or linking between components *when they are functioning together*" (emphasis added).[7]

---

5. Contrary to Innova's contention of their irrelevance (because the claim terms of the '759 patent are "self-evident") (Doc. 44), both the specification and the file history are always considered as part of the intrinsic evidence used to interpret claims. *See Vitronics*, 90 F.3d at 1582 ("[T]he specification is always highly relevant to the claim construction analysis. [I]t is the single best guide to the meaning of a disputed term."); *Amhil Enters. Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1560 (Fed.Cir. 1996) (citation omitted) ("[P]rosecution history is always relevant to a proper interpretation of a claim."); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed.Cir. 1995) ("Arguments and amendments made during the prosecution of a patent application and other aspects of the prosecution history, as well as the specification and other claims, must be examined to determine the meaning of terms in the claims.").

6. Claim construction's emphasis on intrinsic evidence, which evidence rests in the public record, enables competitors to "apply the established rules of claim construction, ascertain the scope of the patentee's claimed invention[, and] . . . design around the claimed invention. . . . Allowing the public record to be altered or changed by extrinsic evidence introduced at trial, such as expert testimony, would make this right meaningless." *Vitronics*, 90 F.3d at 1583.

7. Innova adds that "it is clear that the term 'operatively connected' simply means that *during operation* the cap and the tube of filtering material are functionally joined or linked" and that "when the components of the Safari product are assembled *for operation* (so that they are operatively connected, i.e. so that they function together) the cap and tube are connected to each other" (Doc. 49) (emphasis added).

Claims 1 and 15 (and claim 22) describe the tube as "operatively connected" to the cap. Because no special definition inconsistent with the ordinary and customary meaning of "operatively connected" appears in the intrinsic evidence, the ordinary and customary meaning of the terms controls. *See Wolverine World Wide*, 38 F.3d at 1197. Here, consultation with a dictionary is proper because the dictionary definition contradicts no "definition found in or ascertained by a reading of the patent documents." *Vitronics*, 90 F.3d at 1584 n. 6. The Oxford English Dictionary defines (1) "operative" as "[p]roductive of the intended or proper effect" and "operatively" as "[i]n an operative manner," VII The Oxford English Dictionary 145 (1970), and (2) "connected" as, "[c]onjoined; fastened or linked together." II The Oxford English Dictionary 837 (1970). In other words, the ordinary and customary meaning of "operatively connected" requires the conjoining or the fastening or linking together of the tube and the cap to produce the intended or proper effect.

In the context of the '759 patent, "operatively connected" requires conjoining, fastening, or linking the tube to the cap, by welding, adhesive, or other means, to create a filter assembly that seals the bottle and filters the contents as the contents are poured.[8] In other words, "operatively connected" requires not merely adjoining or abutting, but affixing the tube to the cap by some tenacious means of physical engagement that results in a unitary structure. Affixing the tube to the cap fixes the tube in position for its intended purpose (i.e., in a position that, upon inversion of the bottle, enables the contents of the bottle to flow through the tube). Affixing the tube to the cap also enables removal of the tube and the cap from the bottle simultaneously. Despite Innova's contention, no intrinsic (or other) evidence limits the conjoining or fastening or linking together of the tube and the cap to "when [the tube and the cap] are functioning together." Innova's construction ignores the limits of "operatively connected" and seeks impermissibly to inject an unsupported temporal limitation into the claims.[9]

■ The other '759 patent claims that address the relationship between the tube and the cap, claims 2, 3, 10 through 14, 20, and 21, all of which depend from claims 1 or 15, support the construction of "operatively connected" meaning to affix the tube to the cap by some tenacious means of physical engagement that results in a unitary structure.[10] These claims describe means of affixing or connecting the tube to the cap for creating a filter assembly that seals the bottle and, upon inversion of the bottle, filters the contents. Claim 2 claims an adhesive connection; claim 3 claims a welded connection; and claims 11 and 20 claim a mechanical connection. Claims 12, 13, 14, and 21 claim types of mechanical connections and claim 10 claims an adhesive, mechanical, or welded connection.[11]

---

8. Examples of means for connecting the tube to the cap disclosed in the '759 patent include adhesive, such as ultraviolet cured adhesive; welding, such as ultrasonic, thermal, or spin welding; and mechanical connections, such as with the use of an O-ring with corresponding engaging grooves, a flange with corresponding engaging projections, or a friction fit with mating cylindrical suction.

9. As evident below, construction of the disputed claim element requires no reference to the extrinsic evidence submitted by the parties.

*See Vitronics*, 90 F.3d at 1585; *Markman*, 52 F.3d at 983.

10. Claims 2, 3, 10, and 11 depend from claim 1; claims 12, 13, and 14 depend from claim 11, which depends from claim 1; claim 20 depends from claim 15; and claim 21 depends from claim 20, which depends from claim 15.

11. Claim 12 teaches the use of an "O-ring received by cooperating grooves formed in ... [the] tube and a portion of ... [the] cap

Each of the claimed means of connecting the tube to the cap affixes the tube to the cap, creates a filter assembly that is removable as one piece from the bottle (or creates a unitary structure), and results in more than merely abutting or adjoining the tube to the cap only during operation.[12]

The claim 1 language, "[a] filter assembly ... comprising: a tube ...; a cap ...; [and] a manual valve," supports a construction of "operatively connected" in both claims 1 and 15 that requires affixing the tube to the cap. *See Southwall Techs.*, 54 F.3d at 1579 (Noting that the same claim terms "cannot be interpreted differently in different claims because claim terms must be interpreted consistently.").[13] The "filter assembly" of claim 1 has a tube and a cap (as well as a "manual valve"), but nothing else. Construing "operatively connected" as affixing the tube to the cap is consistent with the "filter assembly" described in claim 1.

In addition, the selection by the patentees of "operatively associated," which encompasses broader subject matter than "operatively connected," to describe the relationship between the valve and the cap in claims 1 and 15 supports a construction of "operatively connected" that requires not merely adjoining or abutting, but affixing the tube to the cap. The patentees emphasize (presumably unintentionally) the distinction between "operatively connected" and "operatively associated" by placing the phrases in the same claims and in adjoining sentences of the specification. Although "associated" encompasses a valve affixed or connected to a cap, as demonstrated, for example, by figures 1 and 2 of the '759 patent, "associated" also encompasses mere adjoining or abutting, as demonstrated by figure 10.[14] In the embodiment depicted in figure 10, the valve "operatively associated" with the cap is fixed in position for its intended purpose by resting the valve's support (or the

---

second surface;" claim 13 teaches the use of an "internal cylindrical section molded into ... [the] cap into which ... [the] tube fits forming a friction fit by means of mating surfaces; or a ridge molded into one of ... [the] cap or tube which corresponds to a mating indention in the other of ... [the] cap or tube;" claim 21 teaches the use of the friction fit with mating cylindrical suction disclosed in claim 13; and claim 14 teaches the use of a "flange extending substantially perpendicular to ... [the] hollow interior [of the tube of filtering material], and ... [the] cap comprises one or more projections for engaging said flange, said flange and one or more projections providing mechanical connection between ... [the] cap and ... [the] tube."

**12.** Under the doctrine of claim differentiation, "[w]here some claims are broad and others narrow, the narrow claim limitations cannot be read into the broad whether to avoid invalidity or to escape infringement." *United States of America v. Telectronics, Inc.,* 857 F.2d 778, 784 (Fed.Cir.1988) (quotations omitted). Accordingly, Innova argues, the claims describing means of connecting the

tube to the cap cannot limit the claims from which they depend. In other words, Innova asserts the impermissibility of construing the broader language of claims 1 and 15 to cover only means of connecting the tube and the cap disclosed in the dependent claims. The construction adopted here does not so limit claims 1 and 15. For example, claims 1 and 15 read upon a magnetic connection between the tube and the cap, even though no dependent or other claim describes a means of connecting the tube to the cap by magnetic force. *Cf. Tate Access Floors, Inc. v. Maxcess Techs., Inc.,* 222 F.3d 958, 967–68 (Fed.Cir. 2000) ("While two claims of a patent are presumptively of different scope, the doctrine of claim differentiation cannot broaden claims beyond their permissible scope.").

**13.** *Southwall Techs.* requires the construction of "operatively connected" of claims 1 and 15 to apply in claim 22 as well, the only other independent claim of the '759 patent. 54 F.3d at 1579.

**14.** In figure 1, the "valve element 24" is "integral with the cap 15," and in figure 2, the

valve's flange-like bottom end) on a mounting flange that forms the top end of a filter tube, which mounting flange is designed for engaging projections emanating from the interior wall of the cap. The cap has an "open top 51 through which the valve 49 extends until the [valve] support 50 engages the shoulder 419 surrounding the opening 51 and the flange 45 abuts the bottom of the support 50." In other words, the patentees chose "associated" instead of "connected" to claim a relationship between a valve and a cap that fixes the valve in position for its intended purpose by (1) positioning the valve support between a tube and a cap and (2) connecting the tube to the cap by engaging the tube's flange with the cap's projections. This "associated" relationship is identical to the relationship between the tube and the cap in the Safari product, which relationship fixes the tube in position for its intended purpose by (1) positioning the flange of the tube between the cap and the bottle mouth and (2) connecting the cap to the bottle by corresponding threads.

The specification of the '759 patent contains examples only of embodiments of the invention that feature a tube affixed to a cap.[15] The embodiments disclosed in the specification use adhesive, welded, or mechanical means of affixing or connecting the tube to the cap. The patent's abstract notes that the "tube is operatively connected to the cap ... by sonic welding, a mechanical connection, or adhesively." The specification explains that "[t]here is a

great deal of versatility associated with the filter assemblies and containers according to the present invention, the actual filter element being connected to the other components either adhesively, mechanically, or by welding (e.g. sonic welding)." The specification adds:

> [t]he tube may be adhesively connected to the cap second surface, but preferably is welded (e.g. sonically welded) to it, or is mechanically connected to it. For example a mechanical connection may comprise an O-ring received by cooperating grooves formed in the tube and the cap second surface, or the tube may include a flange extending substantially perpendicularly to the hollow interior [of the tube], the so cap comprising one or more projections for engaging the flange, and the flange and one or more projections providing the mechanical connection, or a locking taper slip fit between the cap closure and filter assembly.

Similarly, the drawings of the '759 patent depict only welded, adhesive, or mechanical connections between the tube and the cap. *See, e.g., Wolverine World Wide*, 38 F.3d at 1197 (noting that the drawings of the patent-in-suit support the district court's claim construction).[16] In short, a reading of the claims in view of the specification supports a construction of "operatively connected" that requires affixing the tube to the cap. *See Vitronics*, 90 F.3d at 1582 ("Claims must be read in view of the specification ....").[17]

---

"valve 120 simply comprises a baby bottle nipple which is bonded to the cap 115."

**15.** Although improper to add into a claim an "extraneous limitation appearing in the specification," it is "entirely proper to use the specification to interpret what the patentee meant by a word or phrase in the claim." *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed.Cir. 1988).

**16.** Notably, figure 10 of the '759 patent depicts a filter element having a horizontal annular flange at its top end, similar to Safari's filter element. However, the patentees designed the figure 10 filter's annular flange for mechanically connecting to the cap, not for resting on the mouth of the bottle.

**17.** Affixing the tube to the cap also achieves "optimum portability," as described in the '759 patent's specification.

Finally, the prosecution history supports a construction that requires affixing the tube to the cap. *See Watts v. XL Sys., Inc.*, 232 F.3d 877, 883 (Fed.Cir.2000) (barring the plaintiff from advancing a construction that controverts the plaintiff's statements to the Patent and Trademark Office contained in the prosecution history). On November 6, 1995, the Patent and Trademark Office (the "PTO") rejected original dependent claims 2 through 6, 9, 17, and 18, among others, all of which depended from a claim requiring a tube "operatively connected" to a cap and all of which claimed means of connecting the tube to the cap (Doc. 45, Ex. B–2).[18] Innova distinguished the prior art of Daniels, United States Patent 5,431,813 ("Daniels"), cited by the PTO, and explained that "the dependent claims even more clearly and unequivocally distinguish from the art" because the claimed means of connecting the tube to the cap are taught neither in Daniels nor in other prior art cited by the PTO (Doc. 45, Ex. B–3).[19] On May 1, 1996, the

PTO again rejected the claims disclosing the specific means of connecting the tube to the cap (original claims 2, 3, 5, 6, 9, 17, and 18), except claim 4, which the PTO cancelled (Doc. 45, Ex. B–4). The PTO found the mechanical connection claimed in original claim 17[20] obvious under section 103 of title 35, United States Code, in light of the flange and projections disclosed in Parker, United States Patent 647,580 ("Parker '580") and United States Patent 690,457 ("Parker '457").[21] The PTO noted that "[i]t would have been obvious to utilize the flange/projections of Parker '580 ... to provide a means of securing the placement of the tube within the cap *3* of Parker '457." The PTO rejected original claim 17 also as obvious in light of the combination of Dehn, United States Patent 2,055,096 ("Dehn"),[22] and McDevitt, United States Patent 2,869,724 ("McDevitt").[23] The PTO noted that "McDevitt is considered to disclose a flange, the use of projections to ensure proper attachment is considered to be conventional, and, in any

18. Original claim 2 disclosed an adhesive connection; original claims 3 and 4 disclosed a welded connection; original claims 5, 6, 9, and 17 disclosed a mechanical connection; and original claim 18 disclosed an adhesive, mechanical, and welded connection (Doc. 45, Ex. B–1). The PTO rejected these claims and explained that "[r]egarding the various means of attaching the tube to the cap, such as welding, adhesion, etc., these features are considered to be conventional and would have been obvious in the device of Nohren, Jr. [United States Patent 4,769,144] to provide alternative conventional attachment means" (Doc. 45, Ex. B–2).

19. Daniels discloses a water filtering bottle and a removable water filtering apparatus "snuggly mounted" in the neck of the bottle.

20. In relevant part, original claim 17 read as follows: "[the] tube includes a flange extending substantially perpendicular to ... [the] hollow interior [of the tube], and ... the cap comprises one or more projections for engaging said flange, said flange and one or more

projections providing mechanical connection between said cap and said tube."

21. Parker '580 and Parker '457 disclose means for securing a filter tube in the mouth of the canteen, so that, upon inversion of the canteen for pouring the contents, the contents flow through the filter tube.

22. Dehn teaches an infusion apparatus for beverages, such as coffee or tea, which apparatus comprises a strainer that functions as a filter and as an "air interchanging device" that is "affixed" to a cap and is intended for a vacuum-type receptacle.

23. McDevitt teaches a device for demineralizing and filtering water that comprises a cartridge with a wider top, or annular flange, designed for resting on the mouth of a bottle and for suspending the cartridge in the bottle neck. The cartridge is "sealed in position by the cap" when the cap, which has internal threads, is screwed onto the corresponding threads on the exterior of the bottle neck.

event, the threads of McDevitt are considered to provide this feature. It would have been obvious to utilize the flange/projections of McDevitt in the device of Dehn ... to provide an alternate but equivalent connection means." In response to the rejection of original claim 17, the patentees distinguished McDevitt as "using the flange to suspend the filter," compared to original claim 17's use of the flange to form a mechanical connection to the cap (Doc. 45, Ex. B–5). By arguing this distinction, the patentees conceded that McDevitt disclosed the suspension of a filter element in the neck of a bottle by resting a flange on the bottle mouth, the method employed in Safari's product. Notably, the patentees concluded "[t]his is contrary to Dehn [(which discloses a filter 'affixed' to a cap)] ... *and the claimed invention*" (emphasis added).

The PTO rejected original claims 2, 3, 5, and 6 because the "use of adhesive, welds, or o-rings ... are all considered to be conventional and would have been obvious in the device of Dehn ... to provide a suitable connecting means" (Doc. 45, Ex. B–4). The PTO also rejected original claim 9 in light of figure 5 of Dehn, which disclosed a mechanical friction fit. The PTO also rejected original claims 10, 13 through 15, and 18 through 21 as obvious because, in part, "Parker '457 is considered to disclose a tubular filter block *attached* to a cap as instantly claimed" (emphasis added).[24] The PTO's use of "a tubular filter attached to a cap" in its response revealed the PTO's belief that the claims of the '759 patent require affixing the tube to the cap. *See Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 872–73

(Fed.Cir.1998) ("Examiner's understanding of a term—as evidenced in the file history—is highly probative of what the term means.").

In the September 13, 1996, supplemental amendment, the patentees submitted a new claim (original claim 24) that claimed a "filter assembly mounted in a plastic bottle as recited in claim 22" (Doc. 45, Ex. B–6). Original claim 22 depended from original claim 1, which claimed a "tube [of filtering material] operatively connected" to the cap. In the amendment, the patentees explained:

> filter assemblies, and plastic bottles with filter assemblies, according to the claimed invention have obtained substantial commercial recognition and acceptance in the trade. Also the general concepts of the invention have apparently been copied in bottles constructed by competitors, such bottles having tubes or other elements of activated carbon filtering material *mounted in* caps for plastic bottles.

(Emphasis added). In essence, the patentees conceded that the general concept of the invention of the '759 patent included "mounting" the tube *in* the cap.

## II. INFRINGEMENT

■■■ For literal infringement, the accused product must contain each and every limitation of the asserted patent claim. *Southwall Techs.*, 54 F.3d at 1575. A product that "does not infringe a patent claim literally may still infringe the claim under the doctrine of equivalents if each and every limitation of the claim is literally or equivalently present." *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH &*

---

24. Original claims 10, 13 through 15, and 18 through 21 either claimed or depended from a claim that claimed a "tube operatively connected to ... [a] cap." Original claim 10 depended from original claim 1 (now claim 22); original claim 13 constituted the original

filing of asserted claim 1; original claims 14 and 15 depended from original claim 13; original claim 19 constituted the original filing of asserted claim 15; and original claims 20 and 21 depended from original claim 19.

*Co. KG*, 224 F.3d 1308, 1318–19 (Fed.Cir. 2000).[25]

### A. Literal Infringement of Claims 1 and 15—"Said Tube Operatively Connected to Said Cap"

■ The tube (or filter element) of Safari's product has a horizontal, annular flange at its top end designed for resting on the mouth of the bottle and for suspending the tube in the bottle neck. The tube is fixed in position for its intended purpose only when the separate bottle cap is screwed fully onto the bottle neck. Screwing fully the cap results in contact with and pressure on the tube, immobilizing the tube. Upon inversion of the bottle, the contents may only pour after flowing through the tube. The tube is never affixed to the cap by some tenacious means of physical engagement as required by claims 1 and 15. In other words, the tube of Safari's product is not "operatively connected" to the cap. Accordingly, the Safari product cannot infringe literally claims 1 or 15 of the '759 patent (or any claim dependent on claims 1 or 15).

### B. Infringement By Equivalence of Claims 1 and 15—"Said Tube Operatively Connected to Said Cap"

■ "The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002). A claim limitation "is equivalently present if there are only 'insubstantial differences' between the limitation and the corresponding elements of the device." *Control Res., Inc. v. Delta Elecs., Inc.*, 133

F.Supp.2d 121, 134 (D.Mass.2001). In other words, a product may infringe under the doctrine of equivalents, as a matter of fact, if "it performs substantially the same function in substantially the same way to obtain the same result." *Southwall Techs.*, 54 F.3d at 1579 (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950)); *see K–2*, 191 F.3d at 1366. As with literal infringement, "the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). "Even though infringement by equivalents is an issue of fact ordinarily preserved for the jury, where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment." *CAE Screenplates*, 224 F.3d at 1319.

■ Safari's product fails to infringe claims 1 and 15 under an equivalence theory for two independent reasons. First, prosecution history estoppel bars finding that Safari's product contains the equivalent of an "operatively connected" tube and cap. Second, ignoring prosecution history estoppel, Safari's product contains no equivalent of an "operatively connected" tube and cap.

Prosecution history estoppel bars finding that Safari's product contains the equivalent of the "operatively connected" tube and cap. The doctrine of equivalents "must . . . remain within the boundaries established by the prior art . . . and any surrendered subject matter." *K–2*, 191 F.3d at 1368. Consequently, prosecution history estoppel "will exclude from the

---

**25.** The doctrine of equivalents "is premised on language's inability to capture the essence of innovation." *Festo Corp. v. Shoketsu Kin-* *zoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002).

doctrine of equivalents any subject matter that was, by amendment or argument during the prosecution, relinquished." *K–2,* 191 F.3d at 1367 & 1368; *Southwall Techs.,* 54 F.3d at 1578.[26] Innova is estopped from asserting infringement by equivalence because of arguments and amendments by the patentees during prosecution of the application that resulted in the '759 patent. *See Southwall Techs.,* 54 F.3d at 1583 ("Estoppel extends beyond the basis of patentability .... Clear assertions made during prosecution in support of patentability, whether or not required to secure allowance of the claim, may also create an estoppel.... And once an argument is made regarding a claim term so as to create an estoppel, the estoppel will apply to that term in other claims.").[27] As explained in the claim construction section of this order, the patentees conceded that McDevitt disclosed the method employed in the Safari product for positioning the filter element for its intended purpose and characterized that method as "contrary to ... the claimed invention." Consequently, prosecution history estoppel bars Innova from capturing by equivalence the method disclosed by McDevitt (and employed in the Safari product) and distinguished by the patentees.

Ignoring prosecution history estoppel, Safari's product contains no equivalent of an "operatively connected" tube and cap. *Warner–Jenkinson* explains:

> [w]hat constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum.... Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform.

520 U.S. at 24–25, 117 S.Ct. 1040 (quoting *Graver Tank,* 339 U.S. at 609, 70 S.Ct. 854). In the '759 patent, operatively connecting the tube to the cap requires affixing the tube to the cap by some tenacious means of physical engagement that results in a unitary device. Affixing the tube to the cap in such a manner positions the tube for its intended purpose and enables removal of the tube and the cap from the bottle simultaneously. In addition, an "operatively connected" tube and cap results in "optimum portability." In light of the patent, the file wrapper, and the prior art, merely adjoining or abutting a separate tube and cap, which tube is designed to rest on the bottle mouth, is not the equivalent of affixing the tube to the cap. In other words, the relationship between the tube and the cap in Safari's product fails to

---

**26.** The "[d]etermination of the scope of an estoppel deriving from actions taken before the Patent and Trademark Office requires review of not only the nature of such actions, but the reasons therefor: the prior art thereby distinguished, and the examiner's objections thereby overcome. The reasons for amendment of claims during patent prosecution necessarily depend on the facts and circumstances of the particular case." *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.,* 793 F.2d 1279, 1284–85 (Fed.Cir.1986).

**27.** "[W]hen a patentee attempts to *expand* the literal meaning of a claim under the ... doctrine of equivalents and the prosecution history shows that the expanded scope would be inclusive of subject matter the [patentee] had represented to the examiner was *not* intended to be included in order to get the claim allowed, the patentee may be estopped to contend otherwise." *Intervet Am., Inc. v. Kee–Vet Labs., Inc.,* 887 F.2d 1050, 1054 (Fed.Cir. 1989). Even if a reason for amendment is unrelated to patentability, the court may "consider whether it was the kind of reason that nonetheless might require resort to the estoppel doctrine." *Festo,* 535 U.S. at 735, 122 S.Ct. 1831.

perform "substantially the same function in substantially the same way to obtain the same result" as the "operatively connected" tube and cap claimed in the '759 patent. *Southwall Techs.*, 54 F.3d at 1579 (quoting *Graver Tank*, 339 U.S. at 608, 70 S.Ct. 854); *see K–2*, 191 F.3d at 1366.

■ In addition, the doctrine of equivalents cannot "be used to ignore the actual language of the patent." *K–2*, 191 F.3d at 1366–68 ("[T]he doctrine of equivalents must ... remain within the boundaries established by ... the scope of the patent claims ...."). Thus, "where the patent document expressly identifies a role for a claim limitation, the doctrine of equivalents cannot be used to capture subject matter that does not substantially fulfill that role." *K–2*, 191 F.3d at 1367. "It is important to ensure that the application of the doctrine even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." *Warner–Jenkinson*, 520 U.S. at 29, 117 S.Ct. 1040; *see K–2*, 191 F.3d at 1367. Finding infringement by equivalence would impermissibly both vitiate and ignore the "operatively connected" claim element because the tube in the Safari product is not "connected" to the cap in any manner. *K–2*, 191 F.3d at 1366–67; *see Warner–Jenkinson*, 520 U.S. at 29, 117 S.Ct. 1040. Although Safari's product has a cap to seal the bottle and a tube to filter the contents, no "operatively connected" tube and cap or any equivalent, as required by claims 1 and 15 and patent law, exists in Safari's product.

Because the accused Safari product fails to contain the claimed "operatively connected" feature either literally or under the doctrine of equivalents and, in any

event, prosecution history estoppel bars finding the equivalent, the Safari product infringes no asserted claim of the '759 patent.[28] Consequently, construction of other claim language; determination of the presence in the Safari product of any other claimed feature; or consideration of the validity of the '759 patent is unnecessary.

## III. AMENDMENT OF THE COMPLAINT

■ Finally, Innova seeks to amend the complaint to add a count of infringement of United States Patent 6,165,362 (the "'362 patent"). The '362 patent issued on December 26, 2000, based on the parent application of the patent-in-suit. However, Innova waited until June 13, 2001, to seek amendment of the complaint. The parties exchanged expert reports on June 30, 2000, and rebuttal reports on August 30, 2000, and discovery concluded on August 1, 2000. In addition, the parties filed summary judgment motions in August and September, 2000. Accordingly, Innova sought to amend the complaint to assert another patent almost a year after the end of discovery, more than six months after Innova first learned of its "new" claims, and after the parties moved for summary judgment. Amendment at this stage of the litigation, following Innova's delay, would unduly prejudice Safari. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).[29]

## IV. CONCLUSION

Accordingly, Innova's motion for summary judgment of patent infringement (Doc. 44) is **DENIED** and Safari's motion for summary judgment of non-infringe-

---

**28.** In fact, because the Safari product fails to contain an "operatively connected" tube and cap, the Safari product also fails to infringe non-asserted claim 22, the only other independent claim of the '759 patent.

**29.** Amendment may also prove futile if the claims of the '362 patent require an "operatively connected" tube and cap. *See Foman*, 371 U.S. at 182, 83 S.Ct. 227. However, Innova filed no copy of the '362 patent.

ment (Doc. 45) is **GRANTED** In addition, Innova's motion for summary judgment of patent validity (Doc. 44) and Safari's motion to strike the declarations of Nohren and Pederson (Doc. 51) are **DENIED AS MOOT.** Finally, Innova's motion for leave to amend the complaint (Doc. 58) is **DENIED** and Innova's motion for leave to reply (Doc. 60) is **DENIED AS MOOT.** The Clerk is directed to (1) enter judgment in favor of the defendant and against the plaintiff; (2) terminate any pending motion; and (3) close the file.